## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES J. DeHART, III, | : | 4:10-cv-1848 |
| Chapter 13 Trustee, | : | |
| Appellant, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| BARRY L. MICHAEL, | : | |
| Appellee. | : | |

## MEMORANDUM

### April 4, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Appellant Charles J. DeHart, III, Chapter 13 Trustee ("the Trustee") appeals a July 23, 2010 Opinion (the "Opinion") issued by the Honorable Mary D. France of the United States Bankruptcy Court for the Middle District of Pennsylvania.[1] In the Opinion, the Bankruptcy Court held that the undistributed funds held by the Trustee following a conversion of the case to chapter 7 are property of the debtor Barry L. Michael ("Debtor"). Accordingly, the Bankruptcy Court granted Debtor's motion to compel the Trustee to turn over the undistributed funds. The Trustee filed a timely appeal on September 2, 2010 (Doc. 1). The appeal has been fully

---

[1] The underlying bankruptcy is located at Docket Number 1:05-bk-6085.

briefed by the parties and is therefore ripe for disposition. For the reasons that follow, we will affirm the Opinion of the Bankruptcy Court.

## I.     JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). We review the Bankruptcy Court's factual findings for clear error and exercise plenary review over legal determinations. *See In re Udell*, 454 F.3d 180, 183 (3d Cir. 2006) (citing *In re Woskob*, 305 F.3d 177, 181 (3d Cir. 2002)). Because the factual background of this case is not in dispute, we shall confine our analysis to the legal issues presented on appeal and adopt the Bankruptcy Court's recitation of the facts in Section II, *infra*.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2005, Debtor filed a petition under chapter 13 of the Bankruptcy Code.  His plan of reorganization, confirmed on June 7, 2006, called for him to pay approximately $277 per month to the Trustee for a period of fifty-three months, to be distributed to certain creditors holding secured and priority claims. After the payment of administrative expenses, Debtor proposed that all distributions under the plan be made to three creditors: GMAC Mortgage ("GMAC"), which held the mortgage on Debtor's residence; Citifinancial, which held a lien on the title to Debtor's vehicle; and the Line Mountain School District,

which held a priority claim for taxes. The plan contained the following provision:

> Debtor believes that no funds will be available for [unsecured] claimants. However, to the extent funds become available, said claims including the claim of Pennsylvania Housing and Finance Agency and Citifinancial for the third mortgage, as well as the unsecured portion of the vehicle loan, [are] to be paid pro-rata.

On April 7, 2006, an Order was entered granting Debtor's motion to allow his wages to be attached and paid directly to the Trustee to fund his plan.

On August 15, 2006, GMAC obtained an Order granting it relief from the automatic stay. Although GMAC was now free to foreclose on Debtor's home, Debtor did not attempt to amend his plan or terminate the wage attachment order. Accordingly, the Trustee continued to receive automatic payments of $277 per month from Debtor's employer and to forward distributions from the plan to GMAC. GMAC, however, refused to accept the funds which then accumulated in the Trustee's account until debtor converted his case to chapter 7 on October 26, 2009.

On October 29, 2010, Debtor filed a motion seeking an order compelling the Trustee to turn over to him the accumulated funds totaling $9,181.62. The Trustee objected to the motion on the grounds that the funds were paid under the terms of the chapter 13 plan and were being held in trust for the benefit of unsecured creditors. If the Trustee's objection were sustained, the balance would be distributed *pro rata* to the holders of allowed unsecured claims according to the terms of the confirmed plan.

If the funds are determined to be property of Debtor, they will be distributed to Debtor's counsel in payment of attorney's fees. On July 23, 2010, the Bankruptcy Court issued an Opinion concluding that the undistributed funds held by the Trustee are property of the Debtor. This appeal followed.

## III.   DISCUSSION

As noted by the Bankruptcy Court, prior to the Bankruptcy Reform Act of 1994, courts diverged sharply regarding the appropriate disposition of funds held by the chapter 13 trustee upon the conversion of the case to chapter 7. Courts considering the issue chose one of three possible options: (1) the funds became property of the chapter 7 estate, (2) the funds constituted post-petition property of the debtor, or (3) the funds became property of the creditors pursuant to the confirmed chapter 13 plan. *See, e.g., In re Waugh*, 82 B.R. 394, 398 (Bankr. W.D. Pa., 1998). The 1994 amendments codified at 11 U.S.C. § 348(f), effectively eliminated the first option absent any bad faith by the debtor.[2] The amendments

---

[2] Section 348(f) reads in relevant part:

(f)(1)   Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter of this title-

    (A)   Property of the estate in the converted case shall consist of property of the estate, as of the date of the filing of the petition, that remains in the possession or is under the control of the debtor on the date of conversion;

(2)   If a debtor converts a case . . . in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

did not, however, address whether option two or option three is the proper remedy.

*See In re Hardin*, 200 B.R. 312, 313 (Bankr. E.D. Ky 1996).  Here, the Trustee

asserts that the property should be distributed according to the confirmed chapter

13 plan while Debtor asserts that the property belongs to him. The issue has not

yet been addressed by the Third Circuit Court of Appeals or any federal district

court in Pennsylvania. Further, our review of the Bankruptcy Code reveals no

express statutory language mandating the distribution of chapter 13 funds to

creditors following conversion of the case to chapter 7.  For the reasons set forth

below, we conclude that the intent of Congress in drafting the Bankruptcy Code is

furthered by allowing the funds to revert to the debtor in a situation such as the

one *sub judice*. Therefore, we shall deny the appeal and affirm the Opinion of the

Bankruptcy Court.

A.     **Statutory Language**

Courts concluding that the Bankruptcy Code mandates distribution of

chapter 13 funds to creditors following conversion of the case to chapter 7 rely on

one of two provisions. The first provision is section 1326(a)(2) which reads in

relevant part:

> (2) A payment made under paragraph (1)(A) shall be retained by the
> trustee until confirmation or denial of confirmation. If a plan is
> confirmed, the trustee shall distribute any such payment in accordance

5

with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor. . .

11 U.S.C. 1326(a)(2). Courts relying on this language hold that the word "shall" gives creditors a vested right to receive payments in accordance with the terms of the confirmed plan. Therefore, once the plan for reorganization is confirmed, the debtor forfeits any right to the chapter 13 funds whether or not the case is subsequently converted. *See In re Waugh*, 82 B.R. at 400 (holding that the word shall creates a condition of trust for the benefit of creditors) and *In re Lennon*, 65 B.R. 130, 137 (Bankr. N.D. Ga. 1986) (stating in *dicta* that section 1326(a)(2) is a mandatary provision that has the effect of vesting an interest in creditors provided for in the confirmed chapter 13 plan).

Other courts disagree with the conclusion that section 1326(a)(2) gives creditors a vested right to receive chapter 13 funds. They assert that section 1326(a)(2) addresses only the responsibilities of the trustee, including when plan payments are to begin and what is to happen to such payments in the absence of a confirmed chapter 13 plan. *See In re Boggs*, 137 B.R. 408, 410 (Bankr. W.D. Wash. 1992). Furthermore, the vesting argument assumes the continued operation of the chapter 13 plan to determine which creditors are entitled to payments. Some courts have held that because debtors have an absolute right to convert their case

to chapter 7, any such conversion effectively vacates the chapter 13 plan. *See In re Doyle*, 11 B.R. 110, 111 (Bankr. E.D. Pa 1981); *see also In re Nash*, 765 F.2d 1410 (9th Cir. 1985). Following this reasoning, if the plan is vacated, individual creditors would have no basis upon which to claim a portion of the funds in the possession of the chapter 13 trustee, and the funds would revert to the debtor.

We agree with the reasoning of the court in *Boggs* and conclude that 1326(a)(2) does not vest creditors with a right to post-confirmation funds at the time they are received by the chapter 13 trustee. To hold otherwise would be to stretch the language of the statute beyond it intended scope. The plain language of the statute refers only to the obligations of the trustee, and if Congress had intended to address the rights of creditors, they would have done so explicitly. However, because the issue is not squarely presented, we decline to decide whether conversion of the case to chapter 7 vacates the chapter 13 plan.

The second provision relied upon by courts finding that the code mandates distribution of the chapter 13 funds is section 1302(b)(1), which identifies certain duties of the chapter 13 trustee. This section incorporates *inter alia* the duty to "make a final report and file a final account of the administration of the estate with the court and with the United States trustee." 11 U.S.C. § 704(a)(9). Courts reason by analogy that because the duties of a chapter 13 trustee include duties involved

in wrapping up the estate, such duties must also include the duty to distribute funds in accordance with the confirmed chapter 13 plan. *See In re Pegues*, 266 B.R. 328, 335 (Bankr. D. Md. 2001). Other courts disagree citing the language of section 348(e) which states, "[c]onversion of a case . . . terminates the service of any trustee or examiner that is serving in the case before such conversion." 11 U.S.C. § 348(e). These courts hold that the language expressly prevents the trustee from distributing the funds following conversion. *In re Luna*, 73 B.R. 999, 1002 (N.D. Ill. 1987) (citing *In re Perkins*, 36 B.R. 618, 620 (Bankr. M.D. Tenn. 1983).

   We agree with the reasoning of the District Court in *In re Luna*. Section 348(e) clearly and unambiguously terminates the services of the chapter 13 trustee upon conversion of the case to chapter 7. Any remaining duties of the trustee in winding up the chapter 13 estate should be narrowly construed to include only those duties specifically enumerated by Congress. Because we find no statutory authority permitting a trustee to continue to distribute funds following conversion, we find that the Trustee in the instant matter lacks such authority pursuant to section 348(e).

### B.   Congressional Intent

   We note that our ruling in the case *sub judice* is consistent with general intent of the Bankruptcy Code and the legislative history of the 1994 amendments.

8

In *In re Bobroff*, the Third Circuit Court of Appeals noted that in drafting the Bankruptcy Code, Congress sought to encourage the use of debt repayment plans under chapter 13 rather than liquidation procedures under chapter 7. *See* 766 F.3d 797, 803 (3d Cir. 1985). If the undistributed funds are held to be property of creditors, debtors must bear the risk that they will lose both pre-petition assets and post-petition wages if the plan subsequently proves unavailing. Conversely, a debtor who files under chapter 7 is guaranteed to retain his post-petition wages because such funds are excluded from the bankruptcy estate by operation of section 541(a)(6).[3] Assuming that a debtor qualifies for both chapters 7 and 13, this risk greatly reduces the incentive to attempt reorganization.

Congress evidently considered this consequence when it passed the 1994 amendments. The legislative history to section 348(f) expressly adopts the reasoning of *In re Bobroff* and overrules the line of cases holding that undistributed funds become property of the chapter 7 estate. *In re Pegues*, 266 at 334 (citing the legislative history of the 1994 amendments). However, Congress

---

[3]11 U.S.C. 541(a)(6) reads in relevant part:
(a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case*. (emphasis added).

maintained the possibility that the chapter 7 estate could include property held by the chapter 13 trustee in order to discourage bad faith conversions. *Id*. Unless the undistributed funds are property of the debtor, neither the goal of encouraging repayment plans nor the goal of discouraging bad faith conversions may be advanced.

The Trustee argues that allowing undistributed funds to revert to Debtor will result in two consequences that Congress could not have intended. First, creditors would demand daily distributions from chapter 13 trustees to reduce the potential return to debtors if the case is subsequently converted. Second, returning undistributed funds to debtors creates a windfall. We disagree with both assertions. The frequency and amount of any distributions may be decided in advance by the chapter 13 plan or confirmation order thereby eliminating administrative problems posed by demands for daily distributions. *See* 11 U.S.C. § 1326(c). Furthermore, the return of undistributed funds to the debtor does not create a windfall. Section 541(a)(6) excludes from the bankruptcy estate wages acquired after the filing of the bankruptcy petition. Because all of the funds held by the Trustee were paid pursuant to a wage attachment order, these funds would not have been available to satisfy the claims of creditors if Debtor had originally filed under chapter 7. The return of these funds would merely place Debtor and his

creditors in the same position that both parties would occupy if Debtor had not attempted a repayment plan.

**IV.    CONCLUSION**

For the reasons set forth in this Memorandum, we shall deny the appeal and affirm the Opinion of the Bankruptcy Court. An appropriate Order shall issue.